## LORAIN STEEL CO. v. NEW YORK SWITCH & CROSSING CO.

(Circuit Court, D. New Jersey. July 27, 1903.)

**1. PATENTS—INFRINGEMENT—STREET RAILWAY SWITCHES.**

   The Moxham patent, No. 539,878, for railway switch work, when limited to the specific combination shown, the principal feature of novelty being a center piece provided with hardened track surfaces, was not anticipated, and shows invention. Claims 1 and 2 also *held* infringed.

In Equity. Suit for infringement of letters patent No. 539,878, for railway switch work, granted to Arthur J. Moxham May 28, 1895. On final hearing.

Richard Eyre and Geo. J. Harding, for complainant.
Charles G. Coe and Richard P. Elliot, for defendant.

KIRKPATRICK, District Judge. This suit is brought by the Lorain Steel Company, complainant, against the New York Switch & Crossing Company, defendant, for an alleged infringement of claims 1 and 2 of United States letters patent No. 539,878, issued to Arthur J. Moxham May 28, 1895. The patent is for an improved railway switch and crossing structure. The art to which it applies is that which relates to street railways. The defenses set up are noninfringement, prior use, and anticipation. The claims relied on read as follows:

"(1) A railway switch structure, which consists of a center piece provided with track surfaces, rails forming extensions of said center piece, the whole being secured together by a separate body of cast metal."

"(2) A railway switch structure, which consists of a center piece provided with hardened track surfaces, rails forming extensions of said center piece, and a separate body of cast metal, whereby the whole is secured together."

The defenses of anticipation and noninvention are the only ones that seem to call for serious consideration in the adjudication of the questions involved herein. It is my opinion that prior use of such a device as is shown by the drawings of the patent in suit, and covered by the first and second claims thereof, has not been conclusively shown, and that such defense need not be further considered. The defendant cites several patents granted prior to the date of the patent in suit for the purpose of showing noninvention, and an attempt was made to show that the advance in the art covered by complainant's patent was no new thing, but that it was, rather, the common practice of skilled mechanics and engineers to make use of devices sufficiently similar to that described in the Moxham patent to be a substantial anticipation thereof, and amount to prior use. It will not be necessary to make a comparison of each of the patents cited by defendant with that of the complainant. It will be sufficient to refer to the Vickers patent, upon which the defendant chiefly relies, and the Samuel & Angerer patent, No. 497,554. The former (No. 180,395) is dated July 25, 1876, and is for an improvement in railroad frogs. Vickers suggests, but does not illustrate, the attachment of rails in his device by a casting process. His description of this modification is as follows:

"Another method of attaching the wings (that is, the rails, C and D) to the frog is to form holes through them, as already mentioned, for the center or point, and then to heat them at the same time that the center is heated, and insert them in a properly shaped mold, and cast the metal between them and the center or point at the same time, and thereby unite the three parts firmly together without the aid of clamps or bolts, and in the proper relative position to each other, ready to be laid in the track."

The most that can be said for this patent and for the other patents cited by defendant is that they disclose only the idea of providing a wearing surface at some point in the switch, and securing the two parts of the switch together with cast metal. But it is not contended on the part of the complainant that the patent in suit covers that broad general idea of providing a wearing surface and binding such surface and the track together by cast metal. Its claim is only for the specific device shown in the patent.

From the state of the art at the time the patent was granted it is clear that it is not entitled to a broad construction. It must be limited by the state of the prior art and by the terms of its claims and specifications. It is a device patent for a specific combination of elements. The prior art does not anticipate it, and it is not such a structure as would result from the exercise, under ordinary conditions, of such usual skill as a mechanic versed in the art would use. It seems to have been the first really successful device constructed for the purposes specified; and this notwithstanding the fact that many had attempted to produce such a structure as would meet the requirements of modern street railway traffic. This being a patent for a specific device, limited as heretofore stated, let us see what the device must be. The first claim provides for three elements in a clearly defined combination. The elements and combinations are these: (1) "A center piece provided with track surfaces"; (2) "rails

forming an extension of said center piece"; (3) "the whole being secured by a separate body of cast metal." The second claim is also made up of three elements, and differs from the first claim in that it provides that its first element, viz., the center piece, shall have hardened track surfaces. To anticipate these claims, any prior patent would, of necessity, be obliged to embody this combination of elements. None have been cited to show that this was done. The Vickers patent, above referred to, did not embody these three elements as a combination. It neither showed nor claimed them. Vickers conceived but one thing as an advance in the art at his time, and that was the joining of the rails and the intermediate parts in their proper relation by cast iron, instead of bolts and clamps. In differentiation from this advance of Vickers, what Moxham did was, not broadly to claim as new the binding of the parts of his device by cast iron, but especially to claim a construction containing a new element, namely, a new form for the center portion of the frog, the same being a separate portion, and distinctly new in its shape and structure, and in combination with the other parts of the device. In my opinion, the device closest approaching this that the defendant has shown is not the Vickers patent, but the Samuel & Angerer patent of 1893, No. 497,554. This is the only patent cited which relates to the art as it was found at about the time of the complainant's inventions; but this patent is not an anticipation of the patent in suit. There is no mention made in it of the hardened center piece with track surfaces, as found in complainant's patent. It was not conceived by the inventors of the Samuel & Angerer device. This is the new element that Moxham introduced in making his improvement in the switch structure. The Samuel & Angerer device is a mass of cast iron containing track surfaces with rails embedded therein which form extensions of the track surfaces. Therefore, since there are but two elements in this device, it cannot be anticipation of complainant's patent. It lacks the third and new element of the Moxham patent, viz., the hardened separate center piece with track surfaces.

In view of the above conclusions as to the value of the patents cited by the defendant, my opinion is that the complainant's patent was not anticipated. In my opinion, the introduction of the separate hardened center piece in the switch, as the art then found it, was an improvement having both novelty and utility, and was the result of the exercise of such inventive skill as entitled Moxham to a patent for his device. The patent granted him, therefore, is valid.

The question of infringement is fully demonstrated in the record. It seems to me that it is conclusively shown, both by the drawings representing the structure made by the defendant and the testimony of witnesses who actually examined the structure, that it is made up of the specific combination of elements found in the claims of the patent upon which complainant sues. It is composed of a hardened center piece having track surfaces, rails forming extensions of the same, and these elements are bound together by a separate body of cast metal. These are the elements of the complainant's device and patent. These respective elements in the defendant's device perform

the same functions and are constructed and combined in like manner with those in the complainant's device. The two devices are practically identical. The complainant's patent being valid, and the defendant's device being an embodiment of the combination of the elements of both claims 1 and 2 of the patent in suit, and an infringement thereof, there must be a decree for the complainant.