### LORAIN STEEL CO. v. WHITE MFG. CO.

(Circuit Court, S. D. New York. January 17, 1911.)

PATENTS (§ 328\*)—VALIDITY AND INFRINGEMENT—RAILWAY SWITCH.

> The Moxham patent, No. 539,878, for a railway switch structure, claims 1 and 2, were not anticipated, and disclose patentable invention; also construed, and *held* infringed.

In Equity. Suit by the Lorain Steel Company against the White Manufacturing Company. On final hearing. Decree for complainant.

Linthicum, Belt & Fuller and D. Anthony Usina (Charles Mac-Veagh and Charles C. Linthicum, of counsel), for complainant.

Henry D. Donnelly, for defendant.

HAZEL, District Judge. The Arthur J. Moxham patent, No. 539,878, dated May 28, 1895, relates to railway switch work, and has three claims, the first and second of which are in controversy. They read as follows:

"1. A railway switch structure, which consists of a center piece provided with track surfaces, rails forming extensions of said center piece, the whole being secured together by a separate body of cast metal.

"2. A railway switch structure, which consists of a center piece provided with hardened track surfaces, rails forming extensions of said center piece, and a separate body of cast metal, whereby the whole is secured together."

The object of the invention was:

"To provide a switch structure in which the part subjected to excessive wear may be constructed of a material more durable than the remainder."

The elements of the first claim are: (a) A center piece having track surface rails; (b) rails constructed to form an extension of the center piece; and (c) securing the center piece and rail extensions by a separate body of cast metal. The second claim is similar to the first, save that it specifies a center piece having its track surface hardened. Switches and frogs for railways, as generally understood, are ordinarily placed in the roadbed at points where different sets of rails cross or intersect and at points where the tracks converge. The durability of tracks and switches in connection with rail construction has always been a matter of the utmost concern to railroad constructors,

---

especially where they were located at points of crossing or intersection of rails.

Many prior patents are found in the record for improving rail construction at points of divergence and where frogs and switches are necessary to facilitate the movements of cars. Nearly all of such prior patents have heretofore been considered in prior litigations involving the validity of the claims in controversy. In Lorain Steel Co. v. New York Switch & Crossing Co. (C. C.) 124 Fed. 548, Judge Kirkpatrick held the claims involved in this case valid and infringed. In Lorain Steel Company v. Barbour-Stockwell Company (opinion unreported), Judge Lowell decided that the patent was invalid for lack of patentable invention, and the Circuit Court of Appeals for the First Circuit was of opinion that it disclosed merit and involved patentability. 170 Fed. 79, 95 C. C. A. 361. The language of the Circuit Court of Appeals from which I quote applies to the present record:

"We think the idea of a switch structure embodying a single center piece with hardened surfaces calculated to resist at all points the frictional contact of car wheels crossing from one track to another, to be connected with the rails by a separate body of cast metal, thus presenting a solid one-piece structure, involves a new idea of some considerable value, and that the particular arrangement described for uniting and securing the structural connection between the hardened center piece and the rails through a scheme for a shrinkage grip under the cooling process of a separate body of molten metal poured into the mold which surrounds the center plate and rail ends, thus firmly uniting the whole together without the external fastenings of bolts and plates, taken in connection with the idea of presenting a solid center piece with a hardened surface, involved invention of some degree of merit, and as such entitled to protection commensurate with the degree of the actual invention involved."

In none of the prior patents relating to this art are found the specific features embodied in claims 1 and 2 of a center piece or plate and hardened track surfaces and extensions cast together by a separate body of metal. Indeed, after giving the evidence in its entirety an independent examination, I can see no reason to disagree with the conclusions reached in the prior adjudications as to the validity of the patent and the construction of its claims.

The prior British patents to Irlam, and the Greenwald structure, which were not considered in the prior litigations, do not, in my judgment, approximate the patent in suit as closely, for instance, as the patents to Kenway, to Samuel and Angerer, to Lea, and to Vickers, which were considered and distinguished in the prior litigations. In the Irlam patent, No. 2,694, the parts are riveted to a piece, and in No. 227, a provisional patent, the rail extensions are separate from the plate and secured to the casting by wedging. Neither of these patents discloses the grooved center piece and rail extension combined to form a unitary structure by a separate mass of cast metal. In the Greenwald structure the parts are removable, and have the objectionable features which the patentee by his invention intended to remove. It has a center pocket in a casting to which a plate is riveted and the extension rails are bolted in openings in the casting. In fact, all the parts are riveted or bolted together, and whatever rigidity is thereby

secured depends upon a different principle from that of the Moxham patent in suit.

In the light of subsequent understanding it is not believed that Moxham displayed great ingenuity or invented a great improvement; but he nevertheless progressed the art to a limited degree, in that a new and novel railroad track switch is provided, which evidently fills a want created by present conditions of street transportation—conditions which demand heavier cars than were formerly operated and correspondingly stronger switches at crossings.

The principal dispute arises as to whether defendant's structure and the manner in which the parts are united infringe claims 1 and 2, and whether the second claim must be limited to a method of hardening an initially soft center piece. The defendant contends that, as claim 1 does not specifically refer to a hardened center piece and track surface, such element, as distinguished from a comparatively soft center piece, must be included therein, and, if this is done, that both claims in terms are alike, necessitating holding one or the other invalid. Although the specification describes a center piece as having a beveled edge, I do not think that claim 1 should be limited to such a close form, in view of the evident intention of the patentee to specify a center piece which is capable of being secured by an independent mass of metal, irrespective of whether a hardening process is applied to it or not. Nor does claim 2 require limiting the center piece to a soft material which requires a subsequent process of hardening. Such was also the conclusion reached on this phase of the controversy in Lorain Steel Co. v. New York Switch & Crossing Company and in Lorain Steel Company v. Barbour-Stockwell Company, supra.

As to infringement: In the defendant's structure there is a center piece with track surface of chrome steel and rail extensions, together with a separate casting which secures or binds the entire structure together. The expert witness McCauley, for complainant, testified that in making the defendant's switch a mold is formed in which the rail extensions are placed in proper relation with the center piece, which has a web portion, with a number of openings, and in which the molten metal is poured to form a unitary mass. It can make no difference that Moxham bevels the edges of the cover piece or plate, and by so doing secures a wider piece than at its upper side, nor is it material that the defendant, by its method of molding the cover piece and rails, permits the metal to flow around the center piece, instead of the edges thereof, for the purpose of securing a wider margin or overhang of metal on its center piece. Whatever details of construction there are in defendant's structure which differ from that of complainant are thought negligible, in view of the fact that by defendant's adaptation, which is practically the embodiment of complainant's details of construction, it secures the precise result of the patent in suit.

Decree for complainant, with costs, adjudging the Moxham patent, No. 539,878, valid, and claims 1 and 2 infringed by the defendant.